## ALICE STATE BANK ET AL. *v.* HOUSTON PASTURE COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 154. Argued January 24, 1918.—Decided June 3, 1918.

Upon a review by certiorari, the court confines its discussion to the matter relied on in procuring the writ.

An enclosure bounded on three sides by a fence and on the fourth by deep water (Nueces Bay) will sustain a claim of adverse possession under Rev. Stats., Texas, Art. 5674, if the other elements—claim under registered deeds, payment of taxes, pasturing of cattle and exclusion of others—are also present.

227 Fed. Rep. 1015, reversed.

THE case is stated in the opinion.

*Mr. Henry W. Taft* and *Mr. Walter P. Napier*, with whom *Mr. John G. Boston* was on the brief, for petitioners.

*Mr. Joseph W. Bailey,* with whom *Mr. William D. Gordon* and *Mr. Thomas J. Baten* were on the briefs, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit to recover 1280 acres of land in San Patricio County, Texas. There was a trial by jury in which the Court directed a verdict for the plaintiff as to all but certain excepted portions not in controversy here. Exceptions were saved by the defendants, the petitioners, to their not being allowed to go to the jury on the question whether they had a good defense under the Texas statutes of limitation; but they were overruled and the judgment was affirmed by the Circuit Court of Appeals. A petition for certiorari was allowed on the suggestion that there was a manifest conflict between the ruling and the decision of the state court.

An Act of July 22, 1870, declared that a land certificate for 1280 acres theretofore issued to General Sam Houston for military services was a "just claim from its original date" and authorized the issue of a "patent on the same, in the name of the heirs of General Sam Houston, deceased." General Houston's will gave discretionary power to his executors to make such disposition of his personal and real estate as might seem to them best for the interests of his family. On July 22, 1871, Houston's surviving executor made an instrument purporting to convey the above mentioned land warrant and the interest of Houston's estate and heirs to Coleman, Mathis and Fulton. On December 30, 1872, the warrant was located on land already occupied by those grantees, and the executor's conveyance to them was recorded on July 17, 1873. The defendants held deeds under the successors of Coleman, Mathis and Fulton. A patent was issued "to the heirs of Sam Houston, deceased," on June

22, 1874. The plaintiff derived its title from these heirs under deeds executed in 1914.

A plausible argument can be made that the working of the Act of 1870 and other pertinent facts and statutes which we do not recite was to give to the land warrant the validity and effect that it would have had if lawfully executed in General Houston's life. But as that is not the ground upon which the writ of certiorari was asked or granted we confine our discussion to the matter relied upon in asking the intervention of this Court. *Hubbard* v. *Tod*, 171 U. S. 474, 494. The defendants alleged that if the deeds did not give them a good title, still they had held peaceable and adverse possession of the land, using and enjoying the same, paying taxes thereon, and claiming under deeds duly registered, for more than five years, and therefore that this suit was too late under Rev. Stats. Texas, Art. 5674. They contended that the fact appeared as matter of law, and also that at least the jury might find for them and sufficiently saved the question as against the view taken by the Court below.

There was evidence that the land in question was part of a large pasture fenced on the north along the Chiltipin Creek and on the east and west by fences running from the creek to deep water in Nueces Bay. There was evidence also that the defendants or their predecessors had paid the taxes, had pastured their cattle there, and excluded those of others, and that they claimed under duly registered deeds. The ground on which the Court ruled as it did and refused requests of the petitioners was stated by it to be that the water front on Nueces Bay was not "such a barrier as would put in motion the statutes of limitation." This ruling was in deference to *Hyde* v. *McFaddin*, 140 Fed. Rep. 433, (442). But that case was decided on peculiar circumstances, and we do not think an extensive citation from the Texas decisions necessary to show that when the other elements of ad-

verse occupation are present, deep water upon one side of a parallelogram is as good a barrier as a fence. Evidently that is the law in Texas as well as elsewhere, and an enclosure by fences and the Nueces River has been said to sustain the defence of the statute as well as fences all around. *Dunn* v. *Taylor*, 107 S. W. Rep. 952, 956; 102 Texas, 80, 87. The arguments of the respondent on this point at the most do no more than offer considerations of fact that possibly it might be entitled to present to the jury when the case next is tried.

*Judgment reversed.*