**DRAWDY INVESTMENT COMPANY,** a Florida Corporation, v. **WILLIAM J. LEONARD.**

29 So. (2nd) 198
January 31, 1947
Rehearing denied February 21, 1947

January Term, 1947
En Banc.

*Robert L. Hodges, Claude L. Gray* and *Dorothea C. Watson,* for appellant:

*A. Summerlin* and *Crofton & Wilson,* for appellee.

BUFORD, J.:

The appeal is from judgment rendered in an ejectment action in favor of the defendant against the plaintiff who claimed title to certain land by adverse possession.

The judgment was as follows:

"This cause came on to be further heard on defendants motion for judgment after due notice to plaintiff and the court being advised fully in the premises finds that no sufficient bill of particulars has been filed as required by Law Rule 85 in that on October 21, 1942, plaintiff filed its declaration in this suit with bill of particulars attached, and on October 28, 1942, plaintiff voluntarily filed amended declaration with amended bill of particulars atached, and on May 2, 1944 on motion by defendant for more definite bill of particulars, the court granted said motion. Pursuant to said order, on June 12, 1944, plaintiff filed amended declaration with amended bill of particulars. On August 2, 1944, this Court, by its order sustained defendant's motion for more definite bill of particulars. On August 14, 1944 plaintiff filed amended bill of particulars. On November 14, 1945, court on motion of defendant entered its order that plaintiff file more definite bill of particulars. On December 1, 1945, plaintiff filed its amended bill of particulars. On February 21, 1946, the court entered its order granting motion of defendant for more definite bill of particulars. Yet the plaintiff has not filed or tendered, any other bill of particulars. On May 24, 1946, defendant filed motion for judgment and later gave notice that said motion would be presented to this court on June 22, 1946. At said hearing plaintiff was not represented. Therefore, the court finds that the plaintiff has determined that it will be unable to maintain its cause by reason of the order of this court for more definite bill of particulars.

Therefore, under law Rule 85, in absence of amended bill of particulars required by order of this court, it is thereupon considered, ordered and adjudged that the defendant William J. Leonard is not guilty of unlawful withholding from said plaintiff, Drawdy Investment Company, a corporation, the premises in said plaintiff's amended declaration in this cause mentioned and described, which land and premises is located

in Brevard County, Florida, and more particularly described as follows, to-wit:

"Section 22 (except E¾ of N¼ of said Section 22); all Sections 24, 26, 28, 34 and 36 and all Section 32 (except N¼ of said Section 32); all in Twp. 29 S. Range 35 E. Also: Sections 2, 4, 6, 8, 16, 18, 20 and 30 and NW¼ of NW¼ of Section 10; W¼ of Section 22; W½ and N½ of NE¼, and SW¼ of NE¼ of Section 28; all in Twp. 30 S. Range 35 E."

It is further ordered and adjudged by the court now here, that the said plaintiff take nothing by its suit; and that said defendant do go thereof without day. And it is further ordered and adjudged by this court that the defendant do recover against the plaintiff his costs in this behalf expended, and that the defendant have execution therefor.

DONE, ORDERED AND ADJUDGED at Titusville, Florida, this June 22, 1946."

The better bill of particulars last filed was as follows:

### "BETTER BILL OF PARTICULARS.

"Plaintiff relies upon its claim of right without color of title to the particular property described in said amended declaration as follows, to-wit: Those certain tracts or parcels of land being, lying and situate in said County of Brevard, State of Florida, known and described as follows, to-wit:

"The S½ of NE¼; W½ of NW¼; SE¼ of NW¼ and the S½ of Section 22, Township 29, South Range 35 East;

"All of Section 24, Township 29 South, Range 35 East;

"The N½; N½ of SW¼ and N½ of SE¼ Section 28, Township 29, South, Range 35 East;

"The S½ of NE¼; the S½ of NW¼; the S½ of Section 32, Township 29 South, Range 35 East;

"The SW¼ of NW¼ and the W½ of SW¼ of Section 4 Township 30 South, Range 35 East;

"All of Section 6, Township 30 South, Range 35 East;

"The N½; the NE¼ of SW¼; the N½ of SE¼ of Section 8, Township 30 South, Range 35 East;

"All of section 26 in Township 29 South, Range 35 East;

"The S½ of the SW¼ and the S½ of the SE¼ of Section 28, Township 29 South, Range 35 East;

"All of Section 34, Township 29, South, Range 35 East;

"All of Section 36, Township 29 South, Range 35 East;

"All of Section 2, Township 30 South, Range 35 East;

"The N½ of the NW¼; E½; SE¼ of the NW¼ and the E½ of the SW¼ of Section 4, Township 30 South, Range 35 East;

"The W½ of the SW¼; the SE¼ of the SW¼ and the S½ of the SE¼ of Section 8, Township 30 South Range 35 East;

"The NW¼ of the NW¼ of Section 10, Township 30 South, Range 35 East;

"All of Section 16, Township 30 South, Range 35 East;

"All of Section 18, Township 30, South Range 35 East;

"All of Section 20, Township 30 South, Range 35 East;

"The W½ of the NW¼ and the W½ of the SW¼ of Section 22, Township 30 South, Range 35 East;

"The N½ of the NE¼; the SW¼ of the NE¼ and the W½ of Section 28, Township 30 South, Range 35 East;

"All of Section 30, Township 30 South, Range 35 East;— containing approximately 9,960 acres, more or less.

"Pursuant to Rule 85 plaintiff does hereby specify how and when its claim originated and the facts upon which its claim is based to be as follows, to-wit:

"In the year 1917 plaintiff then being the owner and holder of the paper title to the odd numbered sections in Townships 29 and 30 South, Range 35 East, located in Brevard County, Florida, did enter into actual occupancy and possession of all of the lands included in said Townships 29 and 30 and did protect all of said property located within Townships 29 and 30 as aforesaid by a substantial enclosure including in said substantial enclosure all of the even as well as the odd numbered sections contained in said townships 29 and 30 by building or causing to be built a substantial barbed-wire fence approximately 4½ feet high and consisting of not less than three barbed-wire strands of wire strung upon posts sufficiently close together so that said fence was a substantial cattle proof fence along the western boundary of said Townships 29 and 30 beginning at the Northwest corner of said Township 29 and continuing along the western boundary of Townships 29 and

30 to the southwest corner of said Township 30; that along the Eastern boundary of said Townships 29 and 30 there was located a boggy swamp which was impossible of being fenced and which by its very nature formed a natural barrier and made it unnecessary that a fence be constructed along the eastern boundary lines of said Townships 29 and 30 in that said area consisted of impenetrable sawgrass, through which drained varying amounts of water so that a perfect cattle barrier was formed along the eastern boundary of Townships 29 and 30 during the period from 1917 when plaintiff claims its adverse possession began, continuously through the period up to and including the year 1938 when the defendant began his possession; that plaintiff also built or caused to be built in the year 1917 a similar substantial barbed-wire fence approximately 4½ feet high consisting of not less than three barbed-wire strands upon posts sufficiently close together so that said fence was a substantial cattle proof fence along the southern boundary of Township 30 beginning at the southwest corner of said Township 30 and intersecting with the joining up with plaintiff's fence constructed along the western boundary of said Township 29 and 30 and extending along the southern boundary of said Township 30 for a distance of approximately four miles into the inundated area of boggy swamp which was impossible of being fenced and which constituted a perfect barrier along the remainder of the southern boundary of said Township 30 to the point where the southern boundary intersected with the eastern boundary of said Township 30; that said portion of Township 30 along the southern boundary together with the fenced portion of said southern boundary of approximately four miles constituted a complete enclosure of the southern boundary of said Township 30 so as to prevent cattle from crossing out of said Township 30 along the southern boundary thereof; that plaintiff's fence so constructed along the western boundary of Townships 29 and 30 intersected with and joined a fence then already constructed and built along the northern boundary of Township 29 which said fence began at the northwest corner of said Township 29 and ran eastwardly a distance of approximately three miles along the northern boundary of said Town-

ship 29 as far as it was possible to fence and as far as it was necessary to fence along the northern boundary of said Township 29 at which point on said northern boundary there was located an inundated area consisting of a lake and swamp known as Savanna which extended along the remainder of the northern boundary line of Township 29 and intersected with the eastern boundary line of said Township 29 at the northeast corner of said Township 29 so that said fences so described and the natural barriers so described constituted a perfect and complete enclosure of all of the sections located within Townships 29 and 30 so as to establish a substantial cattle proof enclosure; that within said Township 29 and 30 plaintiff and its officers, agents, and tenants established artesian wells, cattle pens, camping sheds, dipping vats, houses and other improvements upon the property in the manner usually done in the area involved for the uses and purposes for which said property was adapted namely: A cattle range or cow pasture; that said fences so establishing such complete enclosure was fully completed by plaintiff by December 31st 1917, from which date plaintiff claims its claim originated; that beginning with the end of the year 1917 plaintiff, its officers, agents, employees and tenants at all times continuously actually occupied and used said two Townships so fenced and enclosed as cattle pastures up to and including the year 1938 (when the defendant came upon the portion of the property described in plaintiff's amended declaration) and continually kept up and maintained said fences as installed and in a proper state of repairs and the exclusive possession of all of said land within said enclosure and such possession was open, uninterrupted, notorious, adverse, hostile and exclusive of any other right, beginning with the end of the year 1917 up to and including the year 1938 when defendant procured a quit-claim deed to certain of said lands which said quit-claim deed is recorded in Deed Book 240, Pages 30 to 35, Public Records of Brevard County, Florida, said quit-claim deed having as grantors certain persons who as heirs of former record title holders had not been in possession of said lands and whose paper title was not good as against plaintiff's perfected title through adverse possession.

"That plaintiff on or before March 6, 1942, parted with title to the odd numbered sections in said townships 29 and 30 and makes no claim therefor in this suit but alleges that plaintiff's title to the lands described in its amended declaration had become perfect by reason of adverse possession prior to the defendant having procured his quit-claim deed as aforesaid and prior to his having entered into possession of said lands in the year 1938 as aforesaid and plaintiff has never conveyed his title to the lands described in its said amended declaration prior to the institution of this suit; that defendants possession of the portion of said lands described in said amended declaration began less than seven years prior to the institution of this action and cannot affect the title of plaintiff to the land so described which title became perfect by reason of its open, uninterrupted, notorious, adverse, hostile and exclusive possession of said lands described in its amended declaration seven years after date of December 31, 1917, and continuing up to and including the time when the defendant procured his quit-claim deed in the year 1938 and went into possession thereof as hereinbefore indicated.

"That beginning with date of March 6, 1927, after the lands so described had been continuously used by plaintiff as a cattle pasture, plaintiff's agent and tenant, one Calvin Platt, beginning with date of March 6, 1927, did enter into actual occupancy of and did reside upon said lands as plaintiff's agent and tenant and did continue to keep up and maintain said fences so constructed by plaintiff and did continue to use all of said property so enclosed as a cow pasture and that the said Calvin Platt, together with divers others of his employees, actually lived within said townships and upon said property located in said enclosure at all times for a period of fifteen years after date of March 6, 1927, and did from time to time construct other shorter fences and cross fences which from time to time were changed but that said fences and barriers as hereinbefore described constituting the outer boundaries of said Two Townships were continuously kept up and maintained in a good state of repair, and possession of all of said land by the said Calvin Platt, as plaintiff's agent, was maintained continuously and was open, uninterrupted,

notorious, adverse, hostile and exclusive beginning with date of March 6, 1927, for a period of fifteen years thereafter.

"Plaintiff further alleges the facts to be that at the time it constructed its fences and enclosures of said Townships 29 and 30 as aforesaid, that said lands were wild and uncultivated and there was located upon said property a large number of trees and streams of water and plaintiff from time to time during its occupancy of said property for the period beginning with December 31st 1917 up to and including the year 1938 in addition to using said lands so enclosed for pasturage as aforesaid obtained therefrom large quantities of timber and that said substantial enclosure was sufficient to indicate its purpose to claim ownership and use of the land to the exclusion of all others and to protect said lands from trespassing vehicles, riders or stock. That along the fence rows there existed the necessary gaps and cattle guards for roads going through the land or over the water too deep for fences but that these gaps and cattle guards did not destroy the efficiency of the lands for the purposes of its occupants; that said enclosure so established was sufficient to show on the part of plaintiff a conspicuous effort to maintain a fence and enclosure around the land commensurate with the attending circumstances for the purpose of exercising all rights of ownership of the land in question, and to use the land in the way to which it was suited."

This bill of particulars was held insufficient.

That part of Rule 85 which is pertinent here is as follows:

"If the party relies upon the claim of right without color of title, such bill of particulars shall so state and specify how and when such claim originated and the facts upon which such claim is based."

This Rule is for the purpose of having the party set out fully and clearly the facts upon which he relies for his claim of title and he is bound by the allegations of the bill of particulars as to the facts upon which he relies to sustain his claim. He may not at the trial rely on facts not stated in the bill of particulars to strengthen his claim of title. Therefore, when the party has stated the facts under which he claims in a bill of particulars the court may determine whether or not

those facts, if proved upon trial, would sustain a verdict in his favor.

A plaintiff in ejectment must recover on the strength of his own title and not on the weakness of that of his adversary. In the instant case plaintiff alleges that while it was the owner of the odd numbered sections in Townships 29 and 30 South, Range 35 East, and while the even numbered sections in those two townships were owned by others, it caused the two entire townships to be enclosed, where not enclosed by natural barriers, by a substantial fence and so held the same from 1917 to 1938 when the defendant went into possession of the lands described in the bill of particulars.

It is not alleged that when it went into such possession it was its intent to acquire title to all that 23000 and odd acres of land which it did not own by adverse possession. Its possession in the manner claimed was as consistent with having been exercised for its own convenience in occupying the lands to which it held title in the two townships as it was with any intent on its part to claim the lands by adverse possession.

In Lyon v. Parker Young Co. et al., 96 Vt. 361, it is said: "It has long been the law of this jurisdiction that one who enters upon another's land and so fences it in as to clearly indicate to the true owner and all others who may be interested that he asserts dominion to that limit, may acquire title thereto by adverse possession, though he was at the start without title or color."

And further it is said:

"To have the effect stated, the fence must have been erected and maintained for the purpose of enclosing the land as the property of the person who seeks to make adverse title to it, and not for his convenience in the occupation of his other lands, and this must appear."

That defendant took possession of the involved land in 1938 and plaintiff did not file this suit until the latter part of October 1942, about four years later, may, when considered with other matters alleged in the bill of particulars, be taken to indicate that the plaintiff enclosed the land in the manner alleged merely for its convenience in using the other lands to

which it held title and with no intention to claim title to all the lands in the two townships.

In the bill of particulars it is claimed that the plaintiff built a fence (which is described in the bill of particulars and which we will discuss later), a distance of 12 miles on the west line and a distance of about 4 miles on the south line, making in all some 16 miles of fence, and that the balance of the enclosure consisted of about 3 miles of fence which was found erected on the north boundary and of swamps, savannas, lakes and saw-grass areas. Thus, there were 19 miles of so-called fence erected by the plaintiff, 3 miles of fence that belonged to someone else, and 14 miles of so-called natural barriers. Of the acreage involved in this suit, being 9,960 acres, 3 sections or 1920 acres were touched by the fence on the west boundary and none of the balance of the acreage was nearer than 1 mile to any fence. Two sections touched the so-called natural barrier on the east side. Of the lands involved in this suit the nearest were 3 miles from the north line of the so-called enclosure. We do not think it was ever contemplated that title by adverse possession could be acquired to land areas like that involved here by one who claims that right because of acts and conduct such as are delineated in the bill of particulars. No, the law must not be said to sanction that one may take so much land, not his own, with so little fence, and that little fence not all his own. See Dowdle v. Wheeler, 76 Ark. 529. It is true that adverse possession is usually a mixed question of law and fact. Whether the facts exist which constitute adverse possession is for a jury to determine, but whether the facts as delineated to the court under Rule 85 are sufficient to constitute adverse possession is a question of law for the court to determine. See Horton v. Smith-Richardson Co., 81 Fla. 255, 87 So. 905; Fla. So. Ry. Co. v. Loring, 51 Fed. 932, 935; Adams v. Fryer, 59 Fla. 112, 52 So. 611; McKinnon v. Johnson, 59 Fla. 332, 52 So. 288.

So, whether or not the fences, such as they were, were constructed and maintained by the plaintiff was a proper question for a jury, had it been contested, but the sufficiency of the enclosure is a question of law for the court. See Adams v. Fryer, supra.

We find that plaintiff claimed the benefit of a fence which was erected by someone else for a distance of about 3 miles on the north boundary line. There is nothing to show that plaintiff ever acquired any title to this fence or that he ever exercised any right of ownership over it. Non constat it may belong to the defendant.

Our conclusion is that the bill of particulars fails entirely to show such an actual continued, open and notorious possession of the lands under a claim of right by the plaintiff as has ripened into title by adverse possession.

There is not shown to have existed such possession as would put the defendant or anyone else on notice that plaintiff was holding the same adversely with intent to claim title thereto.

So the judgment should be, and is, affirmed.

THOMAS, C. J., CHAPMAN, ADAMS and BARNS, JJ., concur.

TERRELL, J., not participating.

HARRISON, Associate Justice, dissenting.

HARRISON, Associate Justice, dissenting:

The alleged fact that complainant owned lands embraced within the single enclosure (being alternate sections) does not state a novel situation. It very frequently occurs that a person claims by adverse possession lands adjacent to lands concerning which he holds record title, the whole being comprehended within one enclosure.

It also appears settled that an enclosure may depend in part upon a natural barrier.

See 2 C.J.S. Sec. 26, page 541, and cases there cited, especially Alice State Bank v. Houston Pasture Co., 38 S. Ct. 496, 247 U.S. 240.

A person may often enclose lands by erection of a fence on less than all sides simply by connecting with the fence or fences of his neighbor erected along one or more sides, where the same exists. For the purpose of this hearing it appears immaterial who erected the north boundary fence, if in fact it be true as alleged, plaintiff maintained all fences about the enclosure. To the writer it appears that a person may enter

upon an enclosed tract and in course of time might acquire title thereto if he protects same by substantial enclosure and otherwise adversely holds same as provided by statute.

The statute in question refers to a substantial enclosure, and does not refer to a statutory legal fence. Certainly the statutory legal fence is a substantial one; however, the terms are not synonymous.

The bill of particulars does state as an alleged fact when plaintiff began occupancy of the land, the construction and maintenance of fences which with the barriers described it is alleged "constituted a perfect and complete enclosure so as to establish a substantial cattle-proof enclosure." There is the further allegation as a fact "and continuously kept up and maintained said fences as installed and in proper state of repairs and exclusive possession of all lands within said enclosure, and such possession was open, uninterrupted, notorious, hostile, etc., beginning 1917 to and including 1938." And plaintiff states "use of land by its tenant, Calvin Platt, began March 6, 1927, by use of the property as pasture, construction of fences and cross fences, establishing artesian wells, cattle pens, camping sheds and dipping vats on the property, and that between the years 1917 and 1938 plaintiff obtained large quantities of timber therefrom."

These and other allegations of fact in the bill of particulars should entitle plaintiff to the right of offering proof to sustain same and, therefore, I think the order and judgment of the trial court should be reversed.

