Donald M. CUKA, Plaintiff and Appellant,

v.

JAMESVILLE HUTTERIAN MUTUAL SOCIETY and all persons unknown who have, or claim to have any Interest or Estate in or encumbrances upon the premises described in the complaint, Defendants.

JAMESVILLE HUTTERIAN MUTUAL SOCIETY, Third Party Plaintiff and Appellee,

v.

Lorraine SEIGEL, Executrix of the Estate of George Seigel, deceased, Olivia Miley, formerly known as Olivia Seigel, Executrix of the Estate of Arnold Seigel, deceased, Gerald I. Geraldson, Linda H. Geraldson, William Braunesreither, Evelyn Braunesreither and William Heinsch, Third Party Defendants.

No. 12738.

Supreme Court of South Dakota.

Argued Feb. 25, 1980.

Decided July 1, 1980.

Rehearing Denied Aug. 6, 1980.

R. J. Krueger, Jr. of DeVany & Krueger, Vermillion, for plaintiff and appellant.

Larry F. Hosmer, Yankton, for third party plaintiff and appellee.

MORGAN, Justice.

This appeal stems from a quiet title action initiated by appellant against appellee and other unknown defendants. The trial court entered judgment in favor of appellee and found that it had established ownership by adverse possession to the disputed 35 acres of land. Appellant appeals from that portion of the judgment which gives appellee title to 13.4 acres of wooded area within the disputed land. We affirm.

In 1952 appellee purchased Lots 2, 3, 4, and 5 of Section 2, Township 95 North, Range 56 West in Yankton County, South Dakota. Since that time it has cultivated the land, in addition to the disputed land, and has used portions of it to graze cattle. It slowly began clearing out the trees from the wooded portion of the disputed land prior to 1955, and by the middle 1960s had cleared most of the trees from that area.

Appellant purchased Lot 13 of the same section by warranty deed in 1970. He later bought, pursuant to a quitclaim deed, that portion of Lot 12 of the same section which lays east of the James River. He purchased this latter portion in 1975 for about $30 or $35. The prior owner of Lot 13 was aware that appellee was treating that land as its own, but he failed to take any action to stop it. Appellant was also aware of appellee's use of the land.

The land in question is bordered by the James River and by land owned by appellee. No fences or other such enclosures separate appellee's land from what appellant claims to be his, and no fence borders the land along the James River. Since the James River frequently floods the disputed area, neither party erected any fences.

Appellant can reach the disputed land directly from his land only during wintertime, since he can then walk across the frozen river. During other times, however, he must cross appellee's land to reach it. Appellant and his predecessors in title had only occasionally used the disputed land, and then only during the wintertime.

Both appellant and appellee paid taxes on more land than each owned. In 1974 appellant had his land surveyed to ascertain exactly what land he owned. From the survey he found out that appellee was in fact using his land. In 1974 or 1975 appellant approached appellee about its use of his property. After it refused to abandon the land, appellant sued to quiet title, bringing this action in June of 1976.

At a court trial appellant claimed title to the entire 35 acres by deed, while appellee claimed title by adverse possession. The trial court held that appellee had established ownership to all 35 acres by adverse possession. On appeal appellant concedes that appellee established ownership to 21.6 acres by regularly cultivating it for more than twenty years. He argues, however, that appellee failed to establish ownership by adverse possession to 13.4 acres. These 13.4 acres consisted of a wooded fringe on three sides of the tract adjoining the James River bank. This is the portion which appellee began clearing prior to 1955, but cleared slowly over a number of years. Appellant argues that the twenty-year statutory adverse possession period could not begin to run until the land was cleared of the trees.

A trial court's rulings and decisions are presumed to be correct and this court will not seek reasons to reverse. *Johnson v. Johnson,* 291 N.W.2d 776 (S.D. 1980); *Lytle v. Morgan,* 270 N.W.2d 359 (S.D.1978); *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251 (S.D.1976). A trial court's findings of fact are also presumptively correct and the burden is upon appellant to show error in the findings. *Hilde v. Flood,* 81 S.D. 25, 130 N.W.2d 100 (1964). "The findings of the trial court will not be disturbed on appeal unless the evidence clearly preponderates against them, or when supported by credible evidence." *Feight v. Hansen,* 81 S.D. 84, 92, 131 N.W.2d 64, 68 (1964).

The South Dakota laws dealing with adverse possession are contained in SDCL 15–3. Appellant is the record owner of the land. Under SDCL 15–3–7 he is presumed to have been possessed of the property within the time required by law

unless someone else proved adverse possession for at least twenty years prior to the commencement of the action. "The burden of proving title by adverse possession is upon the one who asserts it." *Broadhurst v. American Colloid Company*, 85 S.D. 65, 74, 177 N.W.2d 261, 266 (1970); *Wallace v. Dunton*, 30 S.D. 598, 139 N.W. 345 (1913). Appellee, therefore, must have proven that it had adversely possessed the land so as to obtain title.

█ Appellant urges this court to set the standard of proof for adverse possession at "clear and convincing" evidence. This court has previously held that "[i]n such an action . . . where the objective of the litigant is to establish an interest in land that is inconsistent with the record title, his proof must be stronger, more intense or of a higher degree than is required in ordinary litigation. . . . [S]uch proof must be clear, satisfactory and convincing." *Lenker v. Musilek*, 75 S.D. 60, 62, 59 N.W.2d 417, 418 (1953). Although that case did not involve adverse possession, it was a quiet title action. We therefore hold that to establish by adverse possession ownership and title which is inconsistent with the record title, the proof must be by clear and convincing evidence.

█ Under SDCL 15–3–13 a person may claim title to property which he has adversely held, even though he does not have claim to said title upon a written instrument. In order to establish an adverse possession under this statute, the adverse claimant must either protect the land by a substantial enclosure or usually cultivate or improve the land, and he must do either act for a continuous period of twenty years. SDCL 15–3–10. Only that portion of land which has been actually and continuously occupied may be claimed when there is no written instrument forming the basis of the claim. SDCL 15–3–12.

█ The trial court in this case found that there were no fences or boundary markers, but that appellee had improved and cultivated the disputed land since 1952. Under the facts of this case, the James River formed a natural barrier around the disputed land, thereby making the 13.4 acres an integral part of the conceded adversely possessed 21.6 acres. The river in this instance was as much of a substantial enclosure as any fence or other boundary marker could have been. "The land claimed in the instant case is unfenced, but because of the water boundary the peninsula can be considered for all practical purposes as enclosed," *Springer v. Durette*, 217 Or. 196, 200, 342 P.2d 132, 134 (1959), and "the sufficiency of the enclosure is a question of law for the court." *Drawdy Inv. Co. v. Leonard*, 158 Fla. 444, 454, 29 So.2d 198, 203 (1947). We hold, therefore, that under the facts of this case the James River formed a substantial enclosure around the land, the same as if a fence had in fact been erected around it.

█ A wooded area such as this need not be completely cleared before the statutory twenty-year adverse possession period begins to run. It is only necessary that a continuous clearing takes place and that the land then be used for other suitable purposes. " 'The possession need not be unceasing, but the evidence should be such as to warrant the inference that the actual use and occupation have extended over the required period.' " *Wiggins v. Taylor*, 31 N.C. App. 79, 83, 228 S.E.2d 476, 478 (1976), quoting *Alexander v. Richmond Cedar Works*, 177 N.C. 137, 98 S.E. 312 (1919); *Berry v. McPherson*, 153 N.C. 4, 68 S.E. 892 (1910). Additionally, the evidence must show that during the statutorily required period the adverse possessor must have "from time to time continuously subjected some portion of the disputed land to the only use of which it was susceptible." *Berry v. McPherson*, 153 N.C. at 6, 68 S.E. at 893.

Although a majority of the clearing took place after 1958, appellee did begin the clearing process prior to 1955, and it used portions of the land for cattle grazing. Additionally, appellee farmed the disputed land, and even though it did not farm the wooded portions until after the trees had been removed, it did farm what it could.

The evidence also shows that appellant and his predecessors in title knew about such use by appellee. When appellant purchased the disputed areas, he should have known about the possible lawsuit. In fact, when he purchased the portion of Lot 12 situated east of the James River, he paid only $30 or $35 for the entire area because of the possible lawsuit to determine ownership and title.

 "What constitutes possession in any case is a question of fact, and each case depends upon its own facts." *Hill v. Richey*, 221 La. 402, 424, 59 So.2d 434, 441 (1952). Additionally, "whether the facts as delineated to the court . . . are sufficient to constitute adverse possession is a question of law for the court to determine." *Drawdy Inv. Co. v. Leonard*, 158 Fla. at 454, 29 So.2d at 203.

We have examined the record and find no evidence which leads us to conclude that the trial court incorrectly determined that appellee had established ownership of the 13.4 acres of wooded area by adverse possession in conjunction with its occupation and use of the remaining 21.6 acres. The presumptions are in favor of the trial court's decision, and appellant has failed to meet the burden of establishing otherwise. On the other hand, appellee has met its burden of showing that it adversely possessed the wooded area for more than twenty years by continuous clearing and improving of the land and then by farming it or using it to graze cattle, all without interruption.

Appellant's argument that he asserted ownership and retained legal title to the land by paying taxes is not persuasive since the Yankton County Treasurer testified that both parties had paid taxes on more land than each owned.

Both parties also urge that we interpret the phrase "usually improved or cultivated." "In the absence of circumstances indicating otherwise, it is to be presumed that the words of the Legislature have been used to convey their ordinary, popular meaning." *Wood v. Waggoner*, 67 S.D. 365, 369, 293 N.W. 188, 190 (1940). Since the words are words of ordinary, common usage, and no circumstances exist to indicate otherwise, we need not interpret the phrase.

Accordingly, the judgment of the trial court is affirmed.

All the Justices concur.