#24534-a-RWS

**2008 SD 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

EUGENE R. ASHBY and
JUDITH A. ASHBY, husband
and wife,                                              Plaintiffs and Appellants,

  v.

JON OOLMAN and CAROL
OOLMAN, husband and wife,                              Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WARREN G. JOHNSON
Judge

* * * *

DYLAN A. WILDE
THOMAS E. BRADY of
Brady Pluimer, PC
Spearfish, South Dakota                                Attorneys for plaintiffs
                                                       and appellants.


THOMAS E. ADAMS of
Voelker and Adams, PC
Deadwood, South Dakota                                 Attorneys for defendants
                                                       and appellees.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 11, 2008

OPINION FILED **04/02/08**

#24534

SABERS, Justice.

[¶1.] Eugene R. Ashby and his wife, Judith A. Ashby, claimed a twenty-five foot wide strip of land between their house and their neighbors, Jon Oolman and his wife, Carol Oolman. When Oolman[1] began construction on the land that Ashby claimed, Ashby brought suit against Oolman for trespass, wrongful occupation and for a determination of the property line. After a bench trial, the circuit court found in favor of Oolman. Ashby appeals and we affirm.

**FACTS**

[¶2.] Ashby owns land in Lead, South Dakota known as 803 Searle Street. Ashby obtained title to this property on July 21, 1998 when Judith Ashby received a limited warranty deed from the Administrator of Veteran's Affairs. The deed described the property as: "The north portion of Lot 4, Block 12, of the Kenwood Addition to the City of Lead, Lawrence County, South Dakota also known as 803 Searle Street in the City of Lead, South Dakota."

[¶3.] Oolman owns the land adjacent to Ashby's land, known as 809 Searle Street. Oolman obtained title by warranty deed from Equity One, Inc. on January 23, 2004. The legal description is: "Lots 1, 2 and 3, Block 12 of the Kenwood Addition to the City of Lead, Lawrence County, South Dakota, as set out in Plat Book 2 Page 55, Lawrence County Records also known as 809 Searle Street."

---

1. Unless further distinction is necessary, the parties will be referred to in the singular (i.e. Ashby and Oolman) even though both plaintiff and defendant consist of a husband and a wife.

-1-

#24534

[¶4.]     These two properties were originally entirely owned by Homestake Mining Company (Homestake).  In 1956, Homestake issued a license to Raymond Grosek allowing him to occupy the property described as:

> A parcel of ground, the west corner of which lies in a Southwesterly direction from Corner No. 4 of said Adam Lode, M.S. 1281, about 105 feet thence Southeasterly about 104 feet, Thence Northeasterly about 52 feet Thence Northwesterly about 100 feet, Thence Southwesterly about 62 feet to the place of beginning.
>
> The dwelling house situated on said parcel of ground is known as No. 803 Searle Street in the City of Lead.

Grosek lived on the property with his family until 1963, when he rented the property to the Hyde family for eleven years.  While the Grosek and Hyde families occupied the land there were two garages on the Homestake property, one on the 803 Searle property and one on the 809 Searle property.  The garage on the 803 Searle side had a fence attached to the back that ran between the two houses and down the hill to the back of the property.  However, while Homestake still owned all of the property, Grosek and Delbert Heller, the occupant of 809 Searle Street, tore down the two garages for safety reasons and laid the wire fence down.

[¶5.]     While Homestake owned all four lots on Searle Street, on July 10, 1978, Homestake conveyed only the 803 property by quitclaim deed to Grosek, who in turn quitclaimed the property to Emmet L. Tapp and Patricia A. Tapp two days later.  The legal description contained on the quitclaim deed from Grosek to Tapp described the property as:

> Lot Four (4) Block Twelve (12) Kenwood Subdivision to the Washington Addition to the City of Lead, Lawrence County, South Dakota; which said Lot is also referred to as Lot eight (8) Highland Park Addition to the City of Lead, South Dakota,

-2-

according to Homestake Mining Company Drawing, indicating said Lot to be Seventy-five (75) feet by Sixty-five and 75/100 65.75 feet more or less. This property is also described as 803 Searle Street.

The legal description contained in the quitclaim deed from Homestake to Grosek did not contain the "Seventy-five (75) feet by Sixty-five and 75/100 65.75 feet more or less" description.[2]

[¶6.]     The 803 Searle property was conveyed a few more times over the years. Eventually, the property was conveyed by Sheriff's Deed to First Federal Savings and Loan Association of Rapid City, South Dakota on March 9, 1987. The Sheriff's deed omitted the 75 foot by 65.75 foot dimensions and described the property as: "the North portion of Lot Four (4) Block Twelve (12) of the Kenwood Addition to the city of Lead, Lawrence County, South Dakota also known as 803 Searle Street in Lead, South Dakota." Title then transferred to the Veteran's Administration, which deeded the property to Ashby.

[¶7.]     Oolman's property was conveyed by Homestake in two separate steps. First, Lot 3 of Block 12 of the Kenwood Addition[3] (a portion of this property is

---

2.     The description in the quitclaim deed from Homestake to Grosek is as follows:

The North Portion of Lot 4, Block 12 of the Kenwood Addition to Lead, South Dakota, according to L.D. Lee's Map of the Kenwood Addition which lot is also known as Lot 8 of the Highland Park Addition to the City of Lead according to J.P. Crick's Map of the City of Lead, South Dakota. The dwelling house situated on the above described lot is known as 803 Searle Street in Lead, South Dakota.

3.     Also known as Lot 9 of the Highland Park Addition according to the J.P. Crick's map. *See* attached copy of J.P. Crick map.

where Ashby claims an interest) was conveyed to Bruce and Rhonda Huber on December 17, 1976. Lots 1 and 2 of the Kenwood Addition[4] were conveyed to the Hubers on February 21, 1977. The house on 809 Searle Street was licensed to Delbert and Jeannie Heller, who conveyed their interest to the Hubers on April 26, 1977. Shortly thereafter, Hubers conveyed their interest in the entire property to Kathy Kirby and Curtis Eide. The Eides moved in June of 1995 and rented the property to the Alleys from June 1998 to August 2000. This property changed hands a couple more times and eventually was conveyed by Equity One, Inc. to Oolman in 2004.

[¶8.] The subject of this appeal is the ownership of a strip of land, approximately twenty-five feet wide, between Ashby's and Oolman's properties. In the spring of 2000, Oolman began building plans for a garage between the two properties. He hired a surveyor to mark the boundary lines and applied to the City of Lead for a building permit. Ashby objected to Oolman's plans and argued that the property line was closer to the Oolman residence than the survey and building plans indicated. Ashby claimed a seventy-five foot frontage on Searle Street, which would place the eastern boundary along a line from a tree stump on Searle Street to a large pine tree at the back of the property. Oolman claimed the property line is located on a steel post just east of Ashby's house. The City of Lead gave Ashby an opportunity to demonstrate the property line was erroneous, but he failed to produce evidence. Thereafter, the city issued a building permit and Oolman began construction on the garage in the summer of 2004.

---

4. Also known as Lots 10 and 11 of the Highland Park Addition.

[¶9.]    Ashby brought suit against Oolman to establish the boundary line between the two properties, for trespass, wrongful occupation, and an order restraining and enjoining Oolman from entering Ashby's land and an order requiring Oolman to restore Ashby's land to its original condition. He claimed he owned the disputed land under three separate theories of adverse possession. The circuit court found in favor of Oolman and dismissed Ashby's complaint. Ashby appeals, raising the following issues:

1.    Whether the circuit court erred in denying Ashby's claim of adverse possession pursuant to SDCL 15-3-15.

2.    Whether the circuit court erred in denying Ashby's claim of adverse possession pursuant to SDCL 15-3-10 or SDCL 15-3-12.

## STANDARD OF REVIEW

[¶10.]    This appeal follows a court trial on the issue of adverse possession. "Proof of the individual elements of adverse possession present questions of fact for the trial court, while the ultimate conclusion of whether they are sufficient to constitute adverse possession is a question of law." City of Deadwood v. Summit, Inc., 2000 SD 29, ¶9, 607 NW2d 22, 25 (quoting Lewis v. Moorhead, 522 NW2d 1, 3 (SD 1994) (citing Lien v. Beard, 478 NW2d 578, 580 (SD 1991))). Therefore, the circuit court's findings of fact are reviewed under the clearly erroneous standard, while its conclusions of law are reviewed under the de novo standard. Fin-Ag, Inc. v. Feldman Bros., 2007 SD 105, ¶19, 740 NW2d 857, 862 (additional citation omitted). Moreover, issues of statutory interpretation and application are matters of law reviewed de novo. Rotenberger v. Burghduff, 2007 SD 7, ¶8, 727 NW2d 291,

294 (*Rotenberger I*) (quoting State v. $1,010 in Am. Currency, 2006 SD 84, ¶8, 722 NW2d 92, 94).

[¶11.]     **1.     Whether the circuit court erred in denying Ashby's claim of adverse possession pursuant to SDCL 15-3-15.**

[¶12.]     If an individual possesses and pays taxes on land for ten years under claim and color of title, SDCL 15-3-15 entitles the tax-paying individual to a judgment of ownership.  SDCL 15-3-15 provides that:

> Every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall have continued for ten successive years in such possession, and shall also during said time have paid all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent and according to the purport of his paper title.  All persons holding under such possession by purchase, devise, or descent before said ten years shall have expired, and who shall have continued such possession and payment of taxes as aforesaid so as to complete said term of ten years of such possession and payment of taxes, shall be entitled to the benefit of this section.

This statute requires:  "(1) claim and color of title made in good faith, (2) ten successive years in possession, and (3) payment of all taxes legally assessed."  Andree v. Andree, 291 NW2d 788, 790 (SD 1980).

[¶13.]     Ashby claims the elements of this statute have been met because he has claim and color of title made in good faith due to the deed from Grosek that contained the 65 feet by 75.65 feet description.  This, Ashby argues, would place the boundary at the old tree stump.  The Lawrence County Equalization Office also has a notation on the property tax assessment card for 803 Searle Street that the lot size was "66 x 73."  Ashby has also paid all the assessed real estate taxes.

[¶14.]     Ashby's arguments fail for two reasons.  First, Ashby did not possess the land under claim and color of title made in good faith.  When Homestake quitclaimed the 803 Searle property, the legal description did not contain the 75 feet by 65.75 feet description.  Only two days later, when Grosek quitclaimed the property to the Tapps, did the size designation appear in the deed.  The description in the quitclaim deed from Homestake only conveyed:

> The North Portion of Lot 4, Block 12 of the Kenwood Addition to Lead, South Dakota, according to L.D. Lee's Map of the Kenwood Addition which lot is also known as Lot 8 of the Highland Park Addition to the City of Lead according to J.P. Crick's Map of the City of Lead, South Dakota.  The dwelling house situated on the above described lot is known as 803 Searle Street in Lead, South Dakota.

[¶15.]     John Arleth testified at trial on behalf of Oolman and said that the north portion of Lot 4 would have a fifty-foot frontage, not the seventy-five foot frontage urged by Ashby, according to all three of the plat maps that he knew of for the property.[5]  Moreover, according to Arleth, Grosek originally had a license for more than just the north portion of Lot 4.  However, Homestake only quitclaimed the north portion of Lot 4 and the deed held by Ashby only indicates ownership of the north portion of Lot 4.  Therefore, Ashby would not have "a claim and color of title made in good faith."

[¶16.]     Nor is there evidence that Ashby paid taxes on the disputed property.  Darlene Piekkola, the Lawrence County Director of Equalization, testified that the

---

5.     The surveyor for Ashby, Loren Vrem, testified that he created a plat map, but he used the dimensions 75 by 65.75 that were not in the quitclaim deed to Grosek, but were placed in the quitclaim deed from Grosek to Tapp.  These

<span style="float:right">(continued . . .)</span>

property size on the assessor card was merely an estimate. She testified that the 66 x 73 is not a measure of the front and one side of the property. Rather, since the property lot was irregular the numbers are probably an average of the sides and front and back. Therefore, it is not demonstrated that taxes were actually assessed and paid on that particular twenty-five foot wide strip of land between the properties. Plaintiff has not demonstrated that the circuit court erred in finding against him regarding SDCL 15-3-15.

[¶17.] **2. Whether the circuit court erred in denying Ashby's claim of adverse possession pursuant to SDCL 15-3-10 or SDCL 15-3-12.**

[¶18.] In the alternative, Ashby claims that the circuit court erred because SDCL 15-3-10 or SDCL 15-3-12 vests title to the disputed property in him. SDCL 15-3-10 provides:

> Whenever it shall appear that the occupant, or those under whom he claims, *entered into the possession of premises under claim of title, exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question,* or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree, or judgment, or of some part of such premises under such claim for twenty years, the premises so included shall be deemed to have been held adversely; except that where the premises so included consist of a tract divided into lots the possession of one lot shall not be deemed a possession of any other lot of the same tract.

(Emphasis added). The code also declares that:

_____

(. . . continued)
    plat maps are not recorded at the Register of Deeds. The recorded plat maps, which were used by Arleth, show a 50 foot frontage for Lot 4.

> For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment, or a decree, land shall be deemed to have been possessed and occupied in the following cases: (1) Where it has been usually cultivated or improved; (2) Where it has been protected by a substantial [e]nclosure . . . .

SDCL 15-3-11.

[¶19.]    Ashby alleges that *Taylor v. Tripp*, 330 NW2d 542 (SD 1983), demonstrates that the circuit court erred. However, the facts in *Taylor* are distinguishable from this case. In *Taylor*, the occupant of the land mistakenly thought her property line extended all the way to a fence, when it actually stopped eleven feet short of the fence. *Id.* at 543. Nonetheless, she used the disputed property for a garden. *Id.* This Court noted that if "an adjoining landowner enters into possession under claim of title and under misapprehension as to the true boundary and continues in possession for twenty years, adverse possession is established under . . . SDCL 15-3-10, not withstanding the fact the land extends beyond the calls of the occupant's deed." *Id.* at 544 (citing Sullivan v. Groves, 42 SD 60, 172 NW 926 (1919)). Additionally, the evidence at trial demonstrated "the fence line acted as a substantial [e]nclosure . . . and . . . the property next to the fence line was usually cultivated." *Id.*; *see also* SDCL 15-3-11.

[¶20.]    Ashby argues that the stump of a tree along with a second pine tree and remnants of a fence, located in the back of the property, constitute a "substantial enclosure." However, a substantial enclosure is more than an invisible line running from a tree stump to a pine tree to a dilapidated, half-hidden fence at the back property line. For example, in *Cuka v. Jamesville Hutterian Mutual Society*, 294 NW2d 419 (SD 1980), this Court found that "the James River formed a

natural barrier around the disputed land" and thus constituted a "substantial enclosure." *Id.* at 422. In *Lewis v. Moorhead*, 522 NW2d 1 (SD 1991), a white fence that did not run the entire distance between the lots was declared a substantial enclosure but it "provide[d] a physical and visual basis for determining the property line." *Id.* at 3 n4 (additional citation omitted). Finally, in *Schultz v. Dew*, 1997 SD 72, 564 NW2d 320, in finding that a tree line constitutes a substantial enclosure, we noted that "natural barriers may also satisfy the requirement of a substantial enclosure." *Id.* ¶13, 564 NW2d at 323.

[¶21.] While natural barriers may be substantial enclosures, the problem in this case is that a tree stump, a second pine tree and a run-down fence at the back of the property is markedly different from the James River, a partial white fence, or a tree line. Additionally, the plain meaning of substantial enclosure does not support a finding that a tree stump is a substantial enclosure. Substantial is defined as "consisting of or relating to substance . . ., not imaginary or illusory . . . [or] being largely but not wholly that which is specified . . . ." Enclosure is defined as "something that encloses [or] something enclosed." Merriam Webster Online Dictionary, www.m-w.com (last accessed on March 20, 2008). An invisible line from stump to pine tree to a hidden run-down fence is not largely enclosing the property and does not meet the definition of substantial enclosure.

[¶22.] Finally, Ashby argues the disputed property is his under SDCL 15-3-12, which provides:

> Where it shall appear that there has been an actual continued
> occupation of premises under a claim of title exclusive of any
> other right, but not founded upon a written instrument, or a

> judgment, or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely.

"[T]he property in question must either have been protected by a 'substantial [e]nclosure' or must have been 'usually cultivated or improved.'" *City of Deadwood*, 2000 SD 29, ¶16, 607 NW2d at 26 (additional citation omitted). Moreover, "[t]he traditional elements of adverse possession require the 'actual, open, visible, notorious, continuous and hostile' occupation of the property for the statutory period." *Id.* (additional citations omitted). The evidence produced at trial falls short and does not support this claim.

[¶23.]     As discussed above, Ashby has not demonstrated the disputed property is substantially enclosed. Likewise, in this case, the testimony from the current and prior occupants of 809 Searle was that Ashby rarely if ever utilized his property and rarely touched the disputed property. Ashby lives in Huron, South Dakota and only utilized 803 Searle approximately three or four times per year and for a few days to a week at a time. When he visited, he parked on the street and not on the disputed property. The current and former residents of 809 Searle testified that they mowed the disputed property when it needed mowing, but Ashby may have mowed it once or twice.[6] Brittany Alley testified that when her family rented the house for three years, they placed a trampoline next to their house and no one used the grass between their home and Ashby's. Finally, there was no testimony that the property

---

6.    Despite Ashby's claim that he mowed the lawn when necessary, the circuit court heard the testimony and specifically found that Eide maintained the disputed property all the way to the steel post next to Ashby's home before and after Ashby bought the property.

-11-

was "usually cultivated." In actuality, the testimony reflects it was a strip of wild grass and weeds that was rarely mowed.

[¶24.] Ashby argues that when Grosek utilized the property there was a garage and a fence separating the property and therefore, that demonstrates the disputed property was on the 803 Searle side. However, when Grosek lived on the property, he did so under a license from Homestake, which was different than the later deeded property. *See supra* ¶¶4-5. He later tore out the garage and fence in 1974 or 1975, while Homestake still owned the property. Grosek never adversely possessed the property. When Homestake quitclaimed the 803 Searle property to Grosek, he received only the north portion of Lot 1, which is exactly what Ashby owns now, nothing more.

[¶25.] Ashby has not demonstrated that the circuit court erred in ruling for Oolman. The evidence in the record demonstrates Ashby's deed did not include the disputed property, nor has Ashby fulfilled the elements of adverse possession under any statute. Therefore, we affirm the circuit court.

[¶26.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

# MAP OF SURVEYS OF LOTS
# 803 AND 809 SEARLES STREET
# LEAD, SOUTH DAKOTA

SEARLES STREET

43.00'
48.00'
50.00'
50.00'
50.00'
50.00'
48.00'

LOT 11

LOT 10

LOT 9

LOT 8

809

803

113.80'
76.00'
141.20'
168.80'
50.00'
50.00'
150.00'
50.00'
50.00'

N
W    E
S

0'    40'    80'    120'

J. P. CRICK MAP
1902



ARLETH &
ASSOCIATES
25 KIRK ROAD
DEADWOOD, SD 57732
605-578-1637

PROJECT:
X
X

DATE: 1 AUG 2006
SCALE: 1" = 40'
DRAWN BY: BL
JOB NO: 7330