1997 SD 72

Mark F. SCHULTZ, Pearl E. Pepka
and Mary T. Carter, Plaintiffs
and Appellees,

v.

Thomas C. DEW and Denise A. Dew,
Defendants and Appellants.

No. 19746.

Supreme Court of South Dakota.

Considered on Briefs Feb. 20, 1997.

Decided June 18, 1997.

Allen J. Eide, Watertown, for plaintiffs and appellees.

William E. Coester, Milbank, for defendants and appellants.

MILLER, Chief Justice.

[¶ 1] Thomas C. Dew and Denise A. Dew appeal a summary judgment in favor of the claim of adverse possession made by Mark F. Schultz, Pearl E. Pepka, and Mary T. Carter (collectively referred to as Pepka). We affirm.

## FACTS

[¶ 2] This case concerns ownership of a strip of land, 45.5 feet by 230 feet, which includes Pepka's driveway and runs across the western edge of Dew's property. The undisputed facts are as follows.

[¶ 3] On April 11, 1946, Lawrence and Pearl Pepka obtained by warranty deed the residential property described generally as Outlot 37, and a portion of Outlot 40 of Big Stone City. In 1991, Pepkas conveyed their interest to their children, reserving for themselves a life estate.[1]

[¶ 4] The chain of title for Dew's property is not as simply stated, but is undisputed. It begins with a warranty deed dated May 8, 1934 conveying lots including the west undivided two-thirds of Outlot 40 to Althea Sourbeck Dew, Emma Gertje, Cloyd W. Armstrong and Elaine Armstrong. Althea Sourbeck Dew obtained from the other three parties a quit claim deed transferring their interests to her.[2] Althea then executed an affidavit of possession on May 26, 1949.[3] Following her death in 1954, the undivided two-thirds interest in Outlot 40 was awarded to her husband, Arthur C. Dew, and her children. Her children then transferred their interests back to their father. Eventually, Arthur Dew conveyed his interest to Elsie R. Dew and Thomas C. Dew. They then conveyed their interest to Thomas C. Dew and Denise A. Dew, husband and wife, the defendants in this action (collectively referred to as Dews).

[¶ 5] Pepkas believed their driveway was on their property and never sought consent of Dew to use the property. Lawrence Pepka put gravel on the driveway and later paved it with asphalt. He mowed the lawn up to a line six feet west of the driveway, believing it to be the boundary between his land and Dew's. In the 1960's, Lawrence and his son Bernard planted seven evergreen trees along the driveway in what is now the disputed area. Bernard received the trees as a gift from the local minister when he was an altar boy. Over the years, they watered the trees, mowed the grass, and maintained the driveway in the disputed area.

---

1.  On May 15, 1991, Lawrence and Pearl conveyed their property to their children, Bernard L. Pepka and Mary T. Carter, and reserved for themselves a life estate. Mary then conveyed her remainder interest to Mark F. Schultz on October 15, 1993 by quit claim. Bernard conveyed his remainder interest, also by quit claim, to Mary on December 6, 1993. All instruments were recorded shortly after their execution.

2.  Elaine Armstrong Knutson and her husband transferred their interest by quit claim deed dated August 26, 1948. Cloyd W. Armstrong and his wife did the same on April 26, 1949, as did Emma Gertje and her husband on April 29, 1949. Each of these quit claim deeds was filed shortly after its execution.

3.  This affidavit, though it may establish Althea occupied or possessed the disputed strip in 1949, does not affect Pepka's claim subsequent to that date.

[¶ 6] They did not erect a fence along what they believed to be the western boundary of their property, nor did they post "no trespassing" signs. A separate gravel road also crosses the property, running roughly parallel to the Pepka driveway, which provides access to the city gravel pit. As a city employee, Lawrence Pepka used the gravel road to the city gravel pit regularly until he retired in 1973.

[¶ 7] It appears that over the years the Pepkas and Dews had a neighborly relationship. As the Pepkas advanced in age, Tom Dew helped them maintain their property. He mowed and shoveled snow for them on the disputed strip, and Pearl provided him baked goods in exchange. Also, when Pearl wanted the snow fence put in place near the driveway after her husband passed away, she asked Tom to put it up, which he did.[4]

[¶ 8] In 1993, Pearl decided to sell her property. It was at that time Dews asserted ownership of the disputed property. Despite attempts to resolve the matter by offering to purchase the disputed strip or obtain an easement, Pepkas could not reach an amicable resolution with the Dews. Pepkas then sued, claiming adverse possession. The trial court found there were no disputed material facts and granted judgment declaring Pepkas to be the owners of the disputed property. Dews appeal.

### ISSUE

[¶ 9] **Did the trial court err in granting summary judgment on the basis that Pepkas had adversely possessed the property for twenty years?**

[¶ 10] Dews claim that adverse possession was not established because Pepkas failed to prove that the disputed strip of land was actually possessed by Pepkas. They claim the facts do not constitute a substantial en-

closure or cultivation of the property sufficient to satisfy the requirements of SDCL 15–3–13. On this basis, Dews claim Pepkas failed to establish entitlement to judgment as a matter of law.

[¶ 11] The standard by which we review summary judgments is well-established.

> Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. On the other hand, '[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment.'

*Ward v. Lange,* 1996 SD 113, ¶ 10, 553 N.W.2d 246, 249 (citations omitted). The parties are in agreement that there is virtually no dispute over any material facts.[5] The question of whether the facts as delineated to the court are sufficient to constitute adverse possession is a question of law for the court to determine. *Lewis v. Moorhead,* 522 N.W.2d 1, 3 (S.D.1994); *Cuka v. Jamesville Hutterian Mut. Soc.,* 294 N.W.2d 419 (S.D. 1980).

[¶ 12] SDCL 15–3–7 [6] creates a presumption that the person holding legal title

---

4. In Dews' brief to this Court, they imply they put up the snow fence as evidence they exercised control over the disputed strip of land. However, Pearl Pepka's deposition testimony does not support that inference.

5. The only point of disagreement is over the time during which Dews have mowed the disputed strip for Pepkas. Dews claim to have mowed it since 1988; Pearl Pepka claims Tom has mowed

it for her since 1992. Recall that Lawrence Pepka died in the fall of 1993.

6. This statute provides:

> In every action for the recovery of real property or the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law; and the occupation of such premises by any other person shall

to property has been in possession of the property, unless someone else can prove adverse possession for at least twenty years prior to commencement of the action.[7] *Cuka*, 294 N.W.2d at 422. "The burden of proving title by adverse possession is upon the one who asserts it." *Id.* The relevant law governing adverse possession in this case is found in SDCL 15–3–13. That statute provides:

> For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, or judgment, or decree, land shall be deemed to have been possessed and occupied in the following cases only:
>
> (1) Where it has been protected by a substantial inclosure; or
>
> (2) Where it has been usually cultivated or improved.

Since these provisions are stated in the disjunctive, a claim of adverse possession may succeed if the claimant establishes either a substantial enclosure or cultivation or improvement.[8] It is the application of these two subsections to the undisputed facts that is at issue here.

[¶ 13] First, Dews claim there was no substantial enclosure sufficient to establish the necessary intent to claim exclusive right to the property. Admittedly, there was no fence. However, natural barriers may also satisfy the requirement of a substantial enclosure. In *Cuka*, we adopted the rationale of courts in Oregon and Florida which held:

> 'The land claimed in the instant case is unfenced, but because of the water boundary the peninsula can be considered for all practical purposes as enclosed,' and 'the sufficiency of the enclosure is a question of law for the court.' We hold, therefore, that under the facts of this case the James River formed a substantial enclosure

around the land, the same as if a fence had in fact been erected around it.

294 N.W.2d at 422 (citations omitted). Here, Pepkas claim the trees planted along the driveway constitute a barrier or enclosure sufficient to satisfy the statute. Their position has logical appeal. If a naturally occurring river, the boundaries of which are susceptible to change over the years (as was established in *Cuka*), may constitute an enclosure, surely natural elements such as trees which are deliberately placed by the person claiming adverse possession may also serve as a boundary. It might be claimed the tree line is not as complete of a barrier or enclosure as a river, but as pointed out in *Cuka*, the James River actually provided access (rather than denied it) during the winter months when the river was frozen. Surely, the enclosure need not be absolutely secure to satisfy subsection (1) of the statute. Further, the trees might actually be more in the nature of an enclosure than the river because, although both can be naturally occurring, the tree line is decidedly a more deliberate enclosure because Pepkas intentionally planted and maintained the trees. As a matter of law, then, the tree line does constitute a substantial enclosure.

[¶ 14] Next, Dews claim the facts do not support the conclusion that the strip of land was "usually cultivated or improved" by Pepkas. Dews claim that:

> a continuous planting or a continuous cultivation would be required but was not the case in this instance where it was simply planting seven trees and then allowing them to grow. Some water may have been put on those trees for a few years, but there is no testimony that 'usual cultivation' by any stretch of the imagination was performed.

Pepkas not only planted the trees in the 1960's and encouraged them to grow, but Pearl testified by deposition that they had

---

be deemed to have been under and in subordination to the legal title, unless it appear that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action.

7.  The requisite holding period and adverse nature of the holding are not at issue here; the only

question is whether the possession satisfies the requirements of SDCL 15–3–13.

8.  The plain language of this statute and Cuka disprove Dews' assertion that "[t]he exclusive test of adverse possession is the physical exclusion of others under a claim of right."

cleaned debris out of the strip on which the driveway and gravel road exist, and mowed the strip as part of the yard surrounding their house, garage, and shed regularly since the 1940's or 1950's. Even Tom Dew conceded that Pepkas had mowed the area until 1988. As a matter of law, mowing the strip of land (in a residential area on the outskirts of town) and planting and maintaining trees on the strip constitutes cultivation.

[¶ 15] Similarly, the undisputed facts also establish Pepkas improved the land. Pepkas initially improved the driveway to their garage by putting gravel over the surface. Later, the surface was upgraded to asphalt or black top. These facts are not disputed. Dews argue the black top had not been sealed or regularly maintained, and thus was not enough of an improvement to satisfy the statute. However, the fact remains that the strip of land is not unimproved; the driveway and landscaping are plain evidence supporting this conclusion. As a matter of law, the gravel and later asphalt driveway, together with landscaping, constitute an improvement to the land, indicating Pepkas were in possession of the disputed strip of property.

[¶ 16] As a defense, Dews also assert that Pepkas have disclaimed title to the property. *See Bartels v. Anaconda Co.,* 304 N.W.2d 108 (S.D.1981); *Weisel v. Hobbs,* 138 Neb. 656, 294 N.W. 448 (1940). This contention lacks merit. As Pepkas note, a disclaimer exists only if it is a knowing relinquishment of an asserted property right and a single act, standing alone, is insufficient to establish a disclaimer. *Taylor v. Tripp,* 330 N.W.2d 542, 545 (S.D.1983); *Bartels,* 304 N.W.2d at 110. Here, the aging and recently widowed Pearl Pepka decided to sell her property, at which time it was discovered that record title to the disputed strip was owned by Tom Dew. When approached about the matter, Dews refused to sell the strip or grant an easement for the driveway, necessitating this action. Pepkas' attempts to settle the matter short of litigation can hardly be said to be the equivalent of the four separate disclaimers (including the exe-

cution of a mortgage) which constituted a disclaimer in *Bartels.*

[¶ 17] Affirmed.

[¶ 18] AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

[¶ 19] SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

[¶ 20] I agree that Pepka established a proper claim to the disputed property by adverse possession. I can not agree that a single act by the adverse holder will never constitute a disclaimer of title as claimed by the majority *supra* at ¶ 16. In this case, the statutory time period of twenty years ran before Pepka offered to buy or lease the disputed strip. Therefore, her offer to buy or lease had no effect on her adverse possession claim, as title already vested in her. Accordingly, I concur in result only.

[¶ 21] An offer to buy the disputed property, if made *before* twenty years expires, constitutes a disclaimer of title and terminates the running of the requisite twenty-year holding period. *Taylor v. Tripp,* 330 N.W.2d 542, 545 (S.D.1983); *Bartels v. Anaconda Co.,* 304 N.W.2d 108, 110 (S.D.1981).

It has been stated that an adverse possessor must "keep his flag flying and present a hostile front to all adverse pretentions." *Commonwealth v. Bierly,* 37 Pa.Super. 496, 504 (1908). Therefore, only acts which signify a permanent occupation of the strip at issue for the requisite time period will convert title by adverse possession. An offer to buy the property from the true owner runs afoul of these principles.... The lowering of the hostile flag broke the required continuity of adverse possession.

*Pistner Bros., Inc. v. Agheli,* 359 Pa.Super. 177, 518 A.2d 838, 840–41 (1986) (other citations omitted); *Van Gorder v. Masterplanned, Inc.,* 78 N.Y.2d 1106, 578 N.Y.S.2d 126, 585 N.E.2d 375, 376 (1991) (if claimant acknowledges superior title in record owner during statutory ten-year period, it negates an essential element of an adverse possession claim, i.e., possession with a claim of right throughout the time period); *Manhattan*

*Sch. of Music v. Solow,* 175 A.D.2d 106, 571 N.Y.S.2d 958, 960 (N.Y.App.Div.1991) ("An offer made by one in possession without title to purchase from the record owner *during* the statutory period is a recognition of the record owner's title and prevents adverse possession from accruing[.]") (emphasis added) (citations omitted); *accord Guariglia v. Blima Homes, Inc.,* 224 A.D.2d 388, 637 N.Y.S.2d 769, 771 (N.Y.App.Div.1996).