1998 SD 81

**Kenneth W. COTTON, as Guardian Ad Litem for S.T., a minor, and S.T. and T.T., individually, Plaintiffs and Appellees,**

v.

**Kathy STANGE and Paula Bierle, Defendants and Appellants.**

**No. 20223.**

Supreme Court of South Dakota.

Considered on Briefs April 29, 1998.

Decided July 22, 1998.

See also, 843 F.Supp. 564.

Thomas E. Alberts, Avon, for plaintiffs and appellees.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, Gary P. Thimsen and Susan M. Sabers of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellants.

JOHNS, Circuit Judge.

[¶ 1.] This is an intermediate appeal from the denial of a motion for summary judgment made by Petitioners and Appellants, Kathy Stange and Paula Bierle, social workers for the South Dakota Department of Social Services (DSS). Plaintiffs and Appellees, T.T. (Older Son), S.T. (Daughter), and S.T. (Younger Son), collectively referred to herein as Children, are the children of R.T. (Father) and 'R.T. (Mother). Children claim Stange and Bierle are legally liable to them, on a negligence theory, for damages they incurred as the result of Stange's and Bierle's failure to timely discover 'Father was sexually molesting them.

[¶ 2.] Stange and Bierle moved for summary judgment on grounds that their actions were protected from liability under the good faith immunity statute, SDCL 26–8A–14, and that they did not owe a duty of care to the children. In denying the motion on the first ground, the circuit court found there existed a genuine issue of material fact whether Stange and Bierle acted in good faith. As to the second ground, the circuit court found Stange and Bierle owed a special duty to the children rather than just a public duty and, thus, concluded Stange and Bierle could be held liable for negligence.

[¶ 3.] Stange and Bierle contend the circuit court erred when it did not grant them immunity and when it determined they owed a special duty to Children. Since we are of the opinion that Stange and Bierle are entitled to a summary judgment on the basis of qualified immunity, we do not reach the duty issue. We reverse and remand with instructions that the circuit court enter judgment for Bierle and Stange.

## FACTS

[¶ 4.] In the summer of 1988, Mother and Father moved with their children to Tyndall, South Dakota. During the eight years prior to the move, DSS officials in various locales compiled an extensive file on the family regarding possible problems in the home, mainly regarding neglect of the children although there were some "red flags" of sexual abuse. All of the complaints and referrals prior to 1988 were deemed unsubstantiated, with the exception of one—in 1986 a complaint of neglect resulted in the brief removal of Older Son from his parents. However, by the summer of 1988 the family was once again together and all prior DSS investigations had been concluded.

[¶ 5.] Following the family's move to the Tyndall area, the Yankton DSS office received several referrals involving this family. Bierle was the supervisor of this office at the time of the referrals and Stange was a social worker under Bierle's supervision. Bierle's first contact with the family was in the fall of 1988, whereas Stange's first contact was in February of 1990. The following referrals were received by the Yankton DSS office while the family lived in the Tyndall area:

(1) October 1988—a referral was made by the Bon Homme School system involving Daughter's disruptive behavior at school, including attempts to control her class by hiding under her desk and overly affectionate behavior towards others. Bierle assigned social workers Ron Czmowski and Angie Keierleber to investigate. During the investigation both Czmowski and Keierleber were concerned about Daughter's behavior but did not substantiate abuse or neglect. Because of their concern, Czmowski discussed psychological testing with the school psychologist. Following testing and counseling, school officials reported Daughter's behavior had improved.

(2) October 1989—a referral was made by the school in reference to Daughter's disruptive behavior and Younger Son's soiling of his pants. Bierle assigned DSS agent Lee Coler to investigate. Coler visited the school where he talked to the children and their teachers. Although he did not find sufficient evidence to substantiate abuse or neglect by the parents, Coler reported his suspicion that there was "something going on" in the family which was not identifiable at that time. Because the school counselor was going to continue to work with the children, it was Coler's hope that the children would eventually open up and provide useful information.

(3) Early 1990—a referral was made by the school in reference to the children's behavioral problems, including Daughter's classroom tantrums, and in reference to both Daughter's and Younger Son's strong body odors. Bierle assigned Stange to investigate the referral. This was Stange's first involvement with this family. Stange contacted school officials, interviewed each of the children individually, and interviewed the parents. While Stange did not substantiate abuse or neglect she reported that she "believed this to be a 'red flag' family."

(4) May 1990—Bon Homme County Sheriff Lyle O'Donnell received reports that Daughter was walking around the town barefoot and was crying. The Sheriff picked her up and helped her look for her parents. Unable to locate her parents, the Sheriff returned her to the family home. Later, the Sheriff informed the DSS of the incident.

(5) August 1990—As a result of contact with Daughter at an emergency room, a local physician reported to DSS that he had found a large amount of string in Daughter's vagina. Based on this report, Stange removed the children from their home and placed them in protective custody. While in protective custody, the children participated in therapy and group discussions during which they related that their father had sexually abused them.

[¶ 6.] Father has admitted to having sexually molested each child from the time of their birth until the children were removed from his home. On September 30, 1992, Father was sentenced to serve a 55-year sentence for the rape of his children. Mother was sentenced at the same time to one year probation for failing to report the crimes for which Father was sentenced.

## STANDARD OF REVIEW

Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' ... All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. On the other hand, '[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment.'

*Beckel v. Gerber,* 1998 SD 48, ¶ 5, 578 N.W.2d 574, 575–76 (quoting from *Schultz v. Dew,* 1997 SD 72 ¶ 11, 564 N.W.2d 320, 322); *Ward v. Lange,* 1996 SD 113 ¶ 10, 553 N.W.2d 246, 249.

## ANALYSIS

■ [¶ 7.] SDCL 26–8A–14 provides for a qualified immunity to any person, including public officials and employees, who participates in the reporting, investigation, or treatment of child abuse and neglect. *B.W. v. Meade County,* 534 N.W.2d 595, 596 (S.D. 1995). It provides in pertinent part:

Any person or party participating in *good faith* in the making of a report ... pursuant to §§ 26–8A–3 to 26–8A–8, inclusive, or pursuant to any other provisions of this chapter, is immune from any liability, civil or criminal, that might otherwise be incurred or imposed.... Immunity also extends in the same manner ... to public officials or employees involved in the investigation and treatment of child abuse or neglect .... (emphasis added).

[¶ 8.] In *B.W.,* we defined the meaning of "good faith," as used in SDCL 26–8A–14,

recognizing that it is not synonymous with the concept of negligence.

Within the bounds of the statute, negligence and lack of good faith are not equivalent. Simply put, if good faith immunity can be overcome by establishing negligence, then good faith immunity is a meaningless concept as one would have to be free from negligence, and thus not liable in any event, to also avail one's self of the doctrine of good faith immunity. Acting in good faith denotes performing honestly, with proper motive, even if negligently. The standard for determining good faith is a defendant's honest belief in the suitability of the actions taken. Thus it is immaterial whether a person is negligent in arriving at a certain belief or in taking a particular action. (citations omitted).

534 N.W.2d at 598.

■ [¶ 9.] Bierle and Stange offered their depositions in support of their motions for summary judgment wherein they testified that they acted with honest intentions and a desire to do their best in the interests of these children. With this showing, it was and is incumbent on Children to make a showing that Bierle and Stange did not act in good faith or, in other words, that they acted with bad faith.[1]

■ [¶ 10.] To counter the testimony of Bierle and Stange, Children offered the affidavit and subsequent deposition of Gretchen A. DeBardeleben. Ms. DeBardeleben is a school guidance counselor in the city of Sioux Falls and a former supervisor with the Child Protection Services of the South Dakota Department of Social Services. Ms. DeBardeleben opined that Bierle and Stange, in light of all of the red flags of sexual abuse known to them, failed to properly investigate the referrals made to them in that they: (1) failed to have the children physically examined by medical personnel; and (2) failed to press the

1. *See Smith v. Halverson,* 273 N.W.2d 146, 151 (S.D.1978) (Wollman, C.J., dissenting) ('Bad faith' is the antithesis of good faith and has been defined in the cases to be when a thing is done dishonestly and not merely negligently. It is also defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.) (citations omitted). To rebut Bierle's and Stange's assertions that they acted in good faith, Children must show that Bierle and Stange acted dishonestly or with some other improper motive.

children when questioning them about sexual abuse or by having others do the additional questioning. Ms. DeBardeleben further opined that, in light of the professional standards required of persons performing the functions of Bierle and Stange,

> neither Defendant Paula Bierle nor Kathy Stange could have had an *honest belief* in the suitability of the actions taken by Paula Bierle and Kathy Stange with regard to the processing of any of the referrals in the ... family file and that the information in the DSS file and each of the referrals compels a person in the position of Defendant Paula Bierle and Kathy Stange to do additional investigation and provide for the safety of each of the three ... children by the physical removal of the children from the ... family home under such safeguards as would take the children out of harm's way and permit the investigating officials to analyze the situation and protect the children. (emphasis added).

[¶ 11.] The presence or absence of good faith requires an examination of the mental state of the person under scrutiny. Albeit the standard by which good faith is to be judged is a subjective one, a person claiming lack of good faith or bad faith can only show the same, in the absence of an admission against interest, by circumstantial evidence which must be measured objectively. Having said that, however, we must once again reiterate that lack of good faith or

> [b]ad faith ... is obviously something far more extreme than a failure to observe reasonable ... standards or the standards of a reasonably prudent [person]. It is irrelevant that the person in question was negligent in forming a particular belief. All that is required ... is the actual belief or satisfaction of the criterion of the 'pure heart and empty head.'

*Garvis v. Scholten,* 492 N.W.2d 402, 404 (Iowa 1992).[2]

[¶ 12.] Based on our entire review of the record in a light most favorable to Children, we fail to find any evidence that Bierle and Stange acted for some improper purpose.

Furthermore, even if we were to consider the opinion of DeBardeleben, we conclude that it is no more than an opinion of negligence. Nowhere in the showing made by Children is there any question raised which creates a genuine issue of fact that Bierle and Stange acted with something other than an honest belief in the suitability of their actions or that they otherwise acted with improper motives.

## CONCLUSION

[¶ 13.] While Children certainly suffered a living hell at the hands of their father, they cannot look to Bierle and Stange for compensation if Bierle and Stange acted in good faith. The most that can be said of Bierle's and Stange's conduct is that they failed to pursue the removal of Children from their home when suspicious circumstances arguably dictated such. These circumstances might amount to negligence but they do not equate with bad faith. The circuit court is reversed and this matter is remanded with the instruction that judgment be entered for Bierle and Stange on the basis they are immune from suit.

[¶ 14.] MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

[¶ 15.] JOHNS, Circuit Judge, for SABERS, Justice, disqualified.

---

2. We quoted *Garvis* in *B.W.,* 534 N.W.2d at 598, for the proposition that "good faith merely requires honesty of intent and it is not necessary to show that the person was diligent or non-negligent."