1999 SD 34

**Richard B. WITTE, an individual, Plaintiff and Appellant,**

v.

**Robert C. GOLDEY, individually and d/b/a Robert C. Goldey, P.A., Defendant and Appellee.**

**No. 20417.**

Supreme Court of South Dakota.

Argued Dec. 2, 1998.

Decided March 17, 1999.

Michael P. Reynolds and Michael C. Loos of Quinn, Eiesland, Day & Barker, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Robert F. LaFleur and Mitchell C. La-Fleur of LaFleur, LaFleur & LaFleur, Rapid City, South Dakota, Attorneys for defendant and appellee.

GORS, Circuit Judge.

[¶ 1.] Richard B. Witte sued Robert C. Goldey, his accountant, for malpractice. The trial court granted summary judgment for Goldey because the statute of limitations had run. We affirm.

## FACTS

[¶ 2.] Richard Witte ran a beer distributorship in Rapid City for nearly forty years. In 1987 he sold his business to an attorney from Crawford, Nebraska.

[¶ 3.] Robert Goldey had been doing Witte's books and taxes for several years and prepared Witte's tax returns for 1988 and 1989. Goldey did not include the payments which the buyer of the business was making to an escrow account at a bank on Witte's individual income tax return. The bank reported the payments to the Internal Revenue Service (IRS). In late 1989 or early 1990, the IRS notified Witte that he would be audited.

[¶ 4.] When the audit was complete sometime in 1990, an IRS agent called Witte and Goldey in for a meeting. During the meet-

ing, Goldey looked at the audit and said he and Witte would have to see a lawyer. Goldey immediately took Witte to the attorney who had prepared the contract for the sale of the business. Counsel advised hiring a tax lawyer and a certified public accountant. Within a couple of weeks after the 1990 meeting with the IRS agent, tax counsel informed Witte that Goldey had not included the escrow payments made to the bank and that Goldey had made other errors.

[¶ 5.] On October 15, 1992, the IRS issued a report indicating that the entire $1,265,912 distribution ($867,450 of which was taxable) to Witte from the liquidation of Witte Beverage Co., Inc., was left off Witte's 1988 individual income tax return. There was a negligence penalty of five percent of the underpayment and a substantial understatement penalty of twenty-five percent of the understatement. For 1989, Goldey omitted the interest on the note payment from the sale of the business from Witte's individual income tax return. Goldey also left Witte's social security income off his individual return and Witte was liable to repay half of the social security received because he earned over $25,000. There was a substantial understatement penalty of twenty percent. On November 19, 1992, the IRS informed Witte that he owed $411,732 plus interest for 1988 and 1989.

[¶ 6.] Witte entered into a settlement agreement with the IRS on July 25, 1994, which was approved by the IRS on August 1, 1994. Witte paid approximately $325,000 for taxes, penalty and interest. Witte served his suit against Goldey on December 11, 1995, which was filed on December 14, 1995. The trial court granted summary judgment for Goldey because the statute of limitations had run.

## STANDARD OF REVIEW

 [¶ 7.] The standard under which we review summary judgment is well established:

Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. On the other hand, '[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment.'

*Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 SD 16, ¶ 6, 575 N.W.2d 457, 459; *Schultz v. Dew*, 1997 SD 72, ¶ 11, 564 N.W.2d 320, 322 (quoting *Ward v. Lange*, 1996 SD 113, ¶ 10, 553 N.W.2d 246, 249). Statute of limitations questions are usually for the jury. *Schoenrock v. Tappe*, 419 N.W.2d 197, 200 (S.D.1988). Summary judgment should only be granted on the statute of limitations when application of the law is in question, and not when there are issues of material fact. *Kurylas, Inc. v. Bradsky*, 452 N.W.2d 111, 113 (S.D.1990).

## STATUTE OF LIMITATIONS FOR ACCOUNTANT MALPRACTICE

 [¶ 8.] The statute of limitations for accountant malpractice actions in South Dakota is found in SDCL 15–2–14.4, which at the time in question provided:

Any action against a licensed public accountant, his agent or employee, for malpractice, error, mistake or omission, whether based on contract or tort, may be commenced only within four years after the alleged malpractice, error, mistake or omission has occurred.[1]

With regard to the related field of attorney malpractice, absent fraudulent concealment of negligent advice, the statute of limitations runs from the "occurrence" of the alleged negligence, not from when the negligence is discovered or the consequential damages are imposed. *Greene*, 1998 SD ¶ 7, 575 N.W.2d at 459; *Keegan v. First Bank of Sioux Falls*,

---

1. The 1996 amendment to SDCL 15–2–14.4 is prospective only.

519 N.W.2d 607, 612 (S.D.1994); *Kurylas*, 452 N.W.2d at 114; *Schoenrock*, 419 N.W.2d at 199; *Hoffman v. Johnson*, 374 N.W.2d 117, 122 (S.D.1985). The accountant malpractice statute of limitations contains the same occurrence rule.

[¶ 9.] Witte's cause of action against Goldey began to run in 1988 and 1989 when the (allegedly negligently prepared) tax returns were filed. Witte did not begin his lawsuit until December of 1995, after the four-year statute of limitations had run. Since the statute of limitations had run, summary judgment is presumed to be correct and the burden is on Witte to establish that the statute of limitations was tolled.

[¶ 10.] Fraudulent concealment and continuous representation can toll the statute of limitations. *Greene*, 1998 SD ¶ 9–10, 575 N.W.2d at 459. Witte did not raise continuous representation and abandoned fraudulent concealment on oral argument[2].

## DECISION

[¶ 11.] Witte argues that accountant malpractice is a negligence claim which requires damages as an element and it is impossible to determine damages in tax audit cases until the settlement with the IRS. Therefore, Witte suggests that the statute of limitations should not begin to run until the settlement was approved by the IRS on August 1, 1994, the date the damages were finally fixed. Witte argues that the "occurrence rule" locks the court house door before damages accrue. Witte proposes a special exception to toll the statute of limitations for tax cases because the IRS audit process takes so long and damages may not be fixed before the statute of limitations has expired.

[¶ 12.] The facts in this case do not support Witte's request. He knew about the malpractice in 1990 shortly after it occurred. As early as October 15, 1992, and certainly no later than November 19, 1992, Witte knew that the IRS claimed he owed more than $400,000 excluding interest. Certainly damages were coming clearly enough into focus to plead them with particularity in 1992. This was well within the statute of limitations. But Witte waited. By July of 1994[3], Witte had settled with the IRS. Certainly Witte's damages were definite by then. But Witte still waited another *sixteen* months, until December of 1995, before bringing suit. Witte simply sat on his claim too long.

[¶ 13.] Witte's request for special consideration in IRS audit cases is a question for the legislature. In fact, the legislature apparently considered this when it shortened the statute of limitations for accountant malpractice from four years to three years in 1996. The legislature recognized the problem by leaving the statute at four years if an IRS audit is involved. SDCL 15-2-14.4. Under the new statute, Witte's lawsuit would still be too late. Any additional consideration to lengthening the statute of limitations in IRS audit cases is a question for the legislature.

[¶ 14.] Witte's final argument is that SDCL 15-2-14.4 is unconstitutional as applied to him because it closed the court house door before his damages accrued in violation of the "open courts" provision in § 20 of article VI of the South Dakota Constitution. We recently rejected this argument in *Green v. Siegel, Barnett & Schutz*, 1996 SD 146, 557 N.W.2d 396.

[¶ 15.] The trial court is affirmed.

[¶ 16.] MILLER, Chief Justice, and SABERS, AMUNDSON and GILBERTSON, Justices, concur.

[¶ 17.] GORS, Circuit Judge, for KONENKAMP, Justice, disqualified.

---

2. Fraudulent concealment only tolls the statute of limitations until the plaintiff discovers the cause of action. *Glad v. Gunderson, Farrar, Aldrich & DeMersseman*, 378 N.W.2d 680, 682 (S.D. 1985). Witte discovered the malpractice in 1990. Therefore his 1995 lawsuit is still outside the four-year statute of limitations.

3. It is not clear factually whether the settlement was completed within the four-year statute of limitations because the record does not disclose when the audit was done or when the audit conference was held with Witte and Goldey or when tax counsel told Witte about Goldey's shortcoming. Arguably, the statute of limitations could be tolled until the time in 1990 when Witte actually discovered the malpractice.