2000 SD 25

**Dan JUTTING, Plaintiff and Appellee,**

**v.**

**Jack HENDRIX and Georgine Hendrix, Husband and Wife, Defendants and Appellants.**

**No. 21090.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2000.

Decided Feb. 16, 2000.

Bruce A. Hubbard of Hansen, Hubbard & Swanson, Sturgis, for plaintiff and appellee.

John T. Hughes of Morman Law Firm, Sturgis, for defendants and appellants.

PER CURIAM.

[¶ 1.] Jack and Georgine Hendrix appeal a trial court judgment granting title by adverse possession to a disputed piece of property to Dan Jutting. We affirm.

FACTS

[¶ 2.] The Hendrixes and Jutting are next door neighbors in a residential area in Sturgis. Both of their homes face south with the Hendrix residence to the west and the Jutting residence to the east. The homes are separated by the Hendrixes' driveway which runs north between the two homes and then curves to the west to a detached garage behind the Hendrix residence. The east side of the driveway is separated from the west side of the Jutting residence by a strip of real property approximately ten feet wide. It is this strip of property that is at issue in this appeal.[1]

[¶ 3.] Jutting's residence was built in 1969 as a "spec" home.[2] Jutting's parents purchased it in 1970. Although the house was complete, no lawn was planted and there was very little landscaping. The builder had placed dirt, which contained some quantities of rock, around the house for landscaping. After moving in, the Jutting family raked the entire lot, including the disputed strip. The Juttings presumed the strip belonged to them and that the east edge of the driveway followed their west property line.

[¶ 4.] In the late spring or summer of 1970, Jutting's father planted grass on the whole lot, including the ten-foot strip, and kept it watered as it grew. During that summer, he also planted two trees on the disputed strip. These trees are now fully grown. Jutting's father also constructed a clothesline on the property that ran from the west to the east. The west support for the clothesline was also located on the disputed property. Later, a swing was hung from that support and used by the Jutting children and grandchildren. Behind the west support, Jutting's father planted lilac bushes. From the summer of 1970 until 1998, the Jutting family has continuously watered and mowed the grass on the disputed strip and raked it when necessary.

[¶ 5.] Jutting's father died in the early 1990's and Jutting's mother remained in the home until 1997 when she sold it to Jutting. Before Jutting purchased the property, a surveyor was hired to do a location survey for the title insurance company. The survey showed that the west boundary of the property was where it was presumed to be, *i.e.*, approximately ten feet from the west side of the Jutting residence.

[¶ 6.] The Hendrix residence has had a number of different owners since its construction in the late sixties. The Hendrixes purchased the property in late 1997.

1. The area in dispute is displayed in the photograph reproduced in the appendix.

2. In common usage, a "spec" home is a home built for sale by a developer with no specific purchaser in mind.

Through subsequent discussions with Jutting, Mr. Hendrix learned there was uncertainty over the exact location of the line between their two properties. In the summer of 1998, he hired a surveyor to do a complete survey to determine the boundaries. The surveyor discovered a ten foot error in the original platting of the subdivision that "slid" the boundaries of the Hendrix and Jutting properties ten feet to the east. This pushed the east line of the Hendrix property to within an inch of the west side of Jutting's residence.

[¶ 7.] Although Jutting was made aware of the true property line, he persisted in trying to maintain the disputed strip of property. Harsh words were eventually exchanged between Jutting and Mr. Hendrix and Hendrix began to construct a split rail fence along the property line within an inch or so of Jutting's residence. Jutting sued the Hendrixes for an injunction to prevent construction of the fence and to quiet title to the disputed strip of property. Jutting also raised claims for trespass and property damage and was later allowed to amend his complaint to include a claim for adverse possession of the disputed strip. The trial was held in March 1999 and the court subsequently entered findings of fact, conclusions of law and a judgment granting Jutting title to the disputed property by adverse possession. The Hendrixes appeal.

### ISSUE ONE

[¶ 8.] **Did the trial court err in determining that Jutting and his parents adversely possessed the disputed strip of land?**

[¶ 9.] The Hendrixes argue the trial court erred in determining that the actions of Jutting and his parents in maintaining the lawn and two trees on the disputed strip of land were sufficient to constitute adverse possession of the property.

■ [¶ 10.] "[W]hether the facts . . . are sufficient to constitute adverse possession is a question of law for the court to determine." *Schultz v. Dew*, 1997 SD 72, ¶ 11, 564 N.W.2d 320, 322. This Court reviews questions of law under a de novo standard. *Paint Brush Corp. v. Neu*, 1999 SD 120, ¶ 15, 599 N.W.2d 384, 389.

■ [¶ 11.] SDCL 15–3–13 sets forth acts indicative of the adverse possession of property. It provides:

For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, or judgment, or decree, land shall be deemed to have been possessed and occupied in the following cases only:

(1) Where it has been protected by a substantial inclosure; or

(2) Where it has been usually cultivated or improved.

"Since these provisions are stated in the disjunctive, a claim of adverse possession may succeed if the claimant establishes either a substantial enclosure or cultivation or improvement." *Schultz*, 1997 SD 72 at ¶ 12, 564 N.W.2d at 323.

[¶ 12.] In *Schultz, supra*, this Court held the planting and maintenance of a line of trees on the disputed property by those claiming adverse possession constituted a substantial enclosure of the property under SDCL 15–3–13(1). We further held that the planting and maintenance of the trees along with the claimants' cleaning of debris out of the disputed area and their regular mowing of the property for thirty or forty years constituted cultivation of the property under SDCL 15–3–13(2). We also held that improvements to a driveway on the property together with landscaping constituted improvements to the land under SDCL 15–3–13(2). Based upon these factors, we concluded that the claimants had sufficiently established their adverse possession before the trial court.

[¶ 13.] The same factors we found controlling in *Schultz* are present here. Thus, the trial court did not err in determining Jutting's parents adversely possessed the disputed property.

## ISSUE TWO

[¶ 14.] **Did Jutting disclaim title to the disputed property?**

[¶ 15.] The Hendrixes contend Jutting disclaimed title to the disputed strip of property by: "slacking off" in the care of the flower beds; putting a stick from one of the disputed trees on the Hendrixes' back porch and telling Mrs. Hendrix, "it's your tree, you take care of it;" joking with Mr. Hendrix about the property and telling him to take care of "his" property; moving the clothesline to let Mr. Hendrix park a camper on the property; and by failing to stop Mr. Hendrix from mowing on the property.

[¶ 16.] In *Schultz, supra,* similar contentions were raised that those claiming adverse possession disclaimed title by attempting to settle the matter. This Court observed, "attempts to settle the matter short of litigation can hardly be said to be the equivalent of the four separate disclaimers (including the execution of a mortgage) which constituted a disclaimer in [*Bartels v. Anaconda Co.,* 304 N.W.2d 108 (S.D.1981) ]." *Schultz,* 1997 SD 72 at ¶ 16, 564 N.W.2d at 324. The same is true here. In *Bartels,* those claiming adverse possession had: admitted to a third party that they had only a ninety-nine year lease on the land from the record owner's predecessor in title; executed a mortgage describing the house and improvements they were mortgaging as being on ground owned by the record owner's predecessor in title; written to the record owners expressing an interest in purchasing the land; and conceded at trial that they never claimed the land adversely to anyone. There is no similar record of express disclaimers in the instant case. Even if there were, Jutting obtained his property seven years after his parents had already occupied the disputed strip of property for the statutory period. Thus, any disclaimers he might have made could not defeat his acquisition of title by adverse possession. *See Bartels, supra* (occupant's disclaimer of title *prior to running of limitations period* precludes his acquisition of title by adverse possession).

[¶ 17.] We have considered the Hendrixes' remaining arguments and find them to be without merit.

[¶ 18.] Affirmed.

[¶ 19.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, participating.