2001 SD 131

**James G. LEWIS and Carmen E. Lewis, Plaintiffs and Appellees,**

v.

**Joan C. ASLESEN, formerly Joan C. Baldwin, and Paul Aslesen, Defendants and Appellants.**

**No. 21714.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 28, 2001.

Decided Oct. 31, 2001.

Rehearing Denied Nov. 19, 2001.

Brenda Ask of Frieberg, Rudolph & Nelson, Canton, South Dakota, Attorneys for plaintiffs and appellees.

John Peterson of Johnson, Eklund, Nicholson & Peterson, Sioux Falls, South Dakota, Attorneys for defendants and appellants.

KONENKAMP, Justice.

[¶ 1.] In this case, we decide, first, whether the trial court erred in granting title by adverse possession to a portion of a strip of land between neighboring resi-

dential lots, and, second, whether the court erred in assessing survey costs. We affirm in part, reverse and remand in part.

**Background**

[¶ 2.] Although they were neighbors on friendly terms for over a quarter century, the Lewises and the Aslesens came to dispute the ownership of a 16–foot–wide strip of land running between their residential lots in Canton, South Dakota. According to the recorded deeds, the disputed property belonged to the Aslesens. They paid all the property tax on it. Both families used this strip for nonessential purposes since they purchased their adjoining lots in the same year, 1972.[1] The uses differed, however. Where the Aslesens used the strip for sports, get-togethers, parking, and occasional access to their property, the Lewises planted three trees roughly along a line in the middle of it and a flower garden on a portion of it. Both families mowed it at various times between 1972 and 1999, the year this action was filed, and both shoveled snow from the sidewalk running across it.

[¶ 3.] To complicate the dispute, the Lewis's predecessor in title (Olson) had already sold the westernmost 9.8 feet of his lot to the Aslesen's predecessor in title (Robins). The result of this purchase was that the new property line between the lots passed through Olson's garage. The entrance of the driveway and most of its length lies wholly within the remainder of the Olson lot, but as the driveway curves toward the garage, it crosses over the legal boundary. When Olson sold the lot to the Lewises, he showed them a marker about 6.2 feet on the other side of the former boundary (a line at 86.3 feet). The Lewises believed that the line separating

1. In the words of the trial court, "[this is] a case where two families, who, for nearly thirty years, have been neighbors and have gotten along together and grown up on that space for nearly thirty years turn on each other and fight over a few feet of lawn that really neither of them [is] using."

their property from that of the Aslesens was at the 92.5 foot mark, rather than at the 76.5 mark as stated on their deed.[2]

[¶ 4.] Consistent with this belief, the Lewises planted trees and a garden roughly in the middle of the strip between their driveway and the 92.5–foot line, and they sprayed for weeds all the way to that line. The trial court found that the trees had been planted more than twenty years before the start of this action in 1999. The court ruled that the Lewises had established adverse possession of approximately 61% of the disputed strip, defined by a line at the westernmost of the two remaining trees (at the 87.4–foot line and running parallel to the eastern boundary of the Lewis property). The court also assessed against the Aslesens the cost of a new survey to ensure correct placement of the new property line.

[¶ 5.] On appeal, the Aslesens contend that the circuit court erred in concluding that the Lewises met their burden of proof in establishing the required elements for adverse possession.[3] The Aslesens also challenge the award of disbursements.

## 1. Adverse Possession

[¶ 6.] The sufficiency of the evidence to constitute adverse possession presents a question of law. *Jutting v. Hendrix*, 2000 SD 25, ¶ 10, 606 N.W.2d 140, 141. We review questions of law un-

der a de novo standard and disbursement awards under the abuse of discretion standard.[4] *Zahn v. Musick*, 2000 SD 26, ¶ 50, 605 N.W.2d 823, 833. We give the trial court's factual findings substantial deference, overturning them only when they are clearly erroneous. *Bartels v. Anaconda Company*, 304 N.W.2d 108, 109 (S.D.1981).

[¶ 7.] Those claiming ownership to land through adverse possession must show that their possession was "actual, open, visible, notorious, continuous, and hostile" for over twenty years. *Taylor v. Tripp*, 330 N.W.2d 542, 544 (S.D.1983). Under SDCL 15–3–13, adverse possession can be established only if it "has been protected by a substantial enclosure or [if] it has been usually cultivated or improved." This statute thus provides a prerequisite to a justiciable adverse possession claim. Failure to show either a substantial enclosure or usual cultivation or improvement preempts the claim. Furthermore, adverse possession must be shown by clear and convincing evidence. *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 422 (S.D.1980).

[¶ 8.] According to the expert testimony of Dr. John Ball, the trees planted by the Lewises had been growing on the property for more than twenty years, the period required to establish adverse possession. Planting and maintaining a

---

**2.** The trial court was unable to determine why Olson thought (or, at least, informed the Lewises) that the property line was 6.2 feet west of the original, rather than 9.8 feet east, as the result of his earlier sale of the strip to Robins.

**3.** They state this argument in two issues, which we combine into one. They also contend in a separate assignment of error that the Lewises disclaimed title to the disputed property. We conclude that the trial court was not clearly erroneous in finding otherwise.

**4.** An "abuse of discretion" is an unjustified, arbitrary, or clearly unreasonable use of discretion. A common test is whether a judicial mind, in view of the law and circumstances, could reasonably have reached a similar conclusion. Implied within "the exercise of discretion is the requirement that the decision not be arbitrary, meaning it must be within a range of permissible choices and have a rationale based in evidence." *Pellegrin v. Pellegrin*, 1998 SD 19, ¶ 31, 574 N.W.2d 644, 650 (Konenkamp, J., concurring in part and dissenting in part).

line of trees on disputed property by those claiming adverse possession constitutes a substantial enclosure of the property under SDCL 15–3–13(1). *Jutting*, 2000 SD 25, at ¶ 12, 606 N.W.2d at 142 (citing *Schultz v. Dew* 1997 SD 72, ¶ 13, 564 N.W.2d 320, 323). In reference to the court's findings, the first prong of SDCL 15–3–13 applies here. In addition to planting and maintaining trees, regular mowing of the property constitutes cultivation under SDCL 15–3–13(2). *Id.* The court's findings support the second prong of SDCL 15–3–13. Finally, landscaping is an improvement to land under SDCL 15–3–13(2). *Id.* Although there was no claim here that the Lewis's garden planted in the disputed strip had been in existence for twenty years, its presence for a substantial part of that time provides additional evidence that the Lewises were laying open claim to the property. As both alternative prongs of SDCL 15–3–13 have been satisfied, the prerequisites for adverse possession have been met.

[¶ 9.] It remains to decide whether the Lewis's possession of the disputed strip was actual, open, visible, notorious, continuous, and hostile for the entire twenty year period. Such a decision is highly fact-specific. *Cuka*, 294 N.W.2d at 423. Here, the line of trees marking a rough boundary line was open, visible, notorious, continuous, and hostile. So were the regular lawn mowing and snow shoveling, the perennial flower garden, and the spraying against weeds. Therefore, we affirm the trial court's judgment that the Lewises established adverse possession up to the line of trees. We also uphold the court's ruling that, to avoid future difficulties, it was prudent to set the precise boundary line just beyond the westernmost of the two remaining trees, i.e., at the 87.4–foot line.

## 2. Award of Disbursements—Survey Costs

[¶ 10.] In considering whether expenses may be awarded to the prevailing party, we look to the applicable statute.

> The prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial. Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts and other similar expenses and charges. These expenditures are termed "disbursements" and are taxed pursuant to § 15–6–54(d).

SDCL 15–17–37. Only those expenses specifically authorized by statute may be taxed as disbursements, and although the trial court has some discretion, it must use cautious restraint within the statutory specifications. *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900, 906 (S.D.1994) (internal citations omitted). In *Atkins v. Stratmeyer*, 1999 SD 131, 600 N.W.2d 891, we addressed, as a matter of first impression, the question whether investigation fees can be awarded as disbursements and concluded that such fees are not recoverable because the statute made no allowance for them. We find surveying costs to be in this instance analogous to investigation fees. Consequently, we remand for a reduction in the disbursement award.

[¶ 11.] The court also awarded the cost of a new survey against the Aslesens to be completed after the judgment was final. As the earlier survey expense should have been disallowed, it was an abuse of discre-

tion to award the expense of the new survey. We reverse that disbursement.

[¶ 12.] Affirmed in part, reversed and remanded in part.

[¶ 13.] SABERS, Acting Chief Justice, and AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 14.] MILLER, Retired Chief Justice, was a member of the Court at the time this action was submitted, but was disqualified and did not participate.